IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08cr134

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| JULIO CESAR ROSALES LOPEZ (4) | ) | |
| JUAN GILBERTO VILLALOBOS (5) | ) | |
| ELVIN PASTOR FERNANDEZ-GRADIS (6) | ) | ORDER |
| CARLOS ROBERTO FIGUEROA-PINEDA (14) | ) | |
| JOHNNY ELIAS GONZALEZ (18) | ) | |
| SANTOS CABALLERO FERNANDEZ (23) | ) | |
| | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on motion by the government for an anonymous

jury (Doc. No. 778) and objections filed by two of the defendants (Doc. Nos. 801, 802).

**I. BACKGROUND**

Six of twenty-six defendants indicted in this case are calendared to begin trial on January

12, 2009, on charges relating to their alleged membership in the Mara Salvatrucha-13 ("MS-13")

street gang and participation in a RICO conspiracy, in violation of 18 U.S.C. § 1962(d). (Doc.

No. 623: Indictment).  That organization is alleged to obstruct justice through threatening and

intimidating witnesses and concealing its criminal activities. (Id. at 13). Among the racketeering

activities detailed in the indictment, the grand jury found probable cause to believe that

Defendant Gonalez murdered an individual in 2005 during a robbery. (Id. at 14).  Defendant

Rosales Lopez is charged with accessory after the fact to a double homicide that occurred in 2007

and a robbery the next day. (Id. at 51, 53).  Defendant Villalobos is charged with being part of a

conspiracy to commit armed robbery. (Id. at 71-76).  Defendant Fernandez-Gradis is charged

with murder in the aid of the alleged racketeering conspiracy, with Defendant Caballero

Fernandez assisting afterwards. (Id. at 77-81).  Significantly, the indictment charges that

members of the conspiracy made plans to murder an individual cooperating with law

enforcement and attempted to intimidate witnesses and to obstruct justice. (Id. at 25).

By the instant motion, the government requests that the Court empanel an anonymous

jury, citing concerns of juror safety based on MS-13's status as an ongoing criminal organization,

its alleged attempts to obstruct justice, the seriousness of the crimes alleged in the indictment,

and the expected publicity about the trial. (Doc. No. 778: Motion at 4-6).  Two defendants object,

arguing  that the government has failed to show that the jury needs such protection and that the

defendants will be alienated from an anonymous jury, resulting in prejudice to their fundamental

rights. (Doc. No. 801 at 1-2, Doc. No. 802).

## II. LEGAL STANDARD

Anonymous juries are permissible when "the interests of justice so require." 28 U.S.C. §

1863(b)(7).  Appellate courts have characterized empaneling an anonymous jury as a "drastic

measure" warranted only in certain, limited circumstances. United States v. Ross, 33 F.3d 1507,

1519 (11th Cir. 1994); accord United States v. Mansoori, 304 F.3d 635, 650 (7th Cir. 2002).[1]

This is because anonymity can implicate a defendant's right to a presumption of innocence by

"raising the specter that the defendant is a dangerous person from whom the jurors must be

protected." United States v. Ochoa-Vasquez, 428 F.3d 1015, 1034 (11th Cir. 2005) (internal

quotation marks omitted). Further, some courts have raised concerns of whether juror anonymity

inhibits a meaningful voir dire process. United States v. Edmond, 52 F.3d 1080, 1090 (D.C. Cir.

1995) (citing United States v. Barnes, 604 F.2d 121, 142 (2d Cir. 1979)).

---

[1]  The issue of an anonymous jury has not been addressed by the Fourth Circuit. See
United States v. Byers, 603 F. Supp. 2d 826, 829 (D. Md. 2009) (finding that "the propriety of
juror anonymity" is "an issue of first impression" within the Fourth Circuit).

These concerns require a court to "balance the defendant's interest in conducting meaningful voir dire and in maintaining the presumption of innocence, against the jury member's interest in remaining free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict." United States v. Amuso, 21 F.3d 1251, 1264 (2d Cir. 1994). Thus, "the court should not order the empaneling of an anonymous jury without (a) concluding that there is strong reason to believe the jury needs protection, and (b) taking reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected." United States v. Paccione, 949 F.2d 1183, 1192 (2d Cir. 1991); accord United States v. Shryock, 342 F.3d 948, 971 (9th Cir. 2003); United States v. Talley, 164 F.3d 989, 1001 (6th Cir.1999); United States v. DeLuca, 137 F.3d 24, 31 (1st Cir.1998).

In determining whether there is strong reason to believe the jury needs protection, courts may consider the following factors:

> (1) the defendant's involvement in organized crime, (2) the defendant's participation in a group with the capacity to harm jurors, (3) the defendant's past attempts to interfere with the judicial process, (4) the potential that, if convicted, the defendant will suffer a lengthy incarceration and substantial monetary penalties, and (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation and harassment.

Ross, 33 F.3d at 1520; see also Shryock, 342 F.3d at 971; United States v. Krout, 66 F.3d 1420, 1427 (5th Cir. 1995); Edmond, 52 F.3d at 1091. These factors "are neither exclusive nor dispositive, and the district court should make its decision based on the totality of the circumstances." Shryock, 342 F.3d at 971 (citing United States v. Brown, 303 F.3d 582, 602 (5th Cir. 2002)). A lone allegation that the defendants are involved in organized crime is usually

3

insufficient; the overriding inquiry is whether the government has shown a "likelihood of obstruction of justice" or "a pattern of violence . . . such as would cause a juror to reasonably fear for his own safety." United States v. Vario, 943 F.2d 236, 241 (2d Cir. 1991). A court may rely upon allegations in the indictment, as well as proffers of what the evidence will show at trial. See Byers, 603 F. Supp. 2d at 830-31; United States v. Edelin, 128 F. Supp. 2d 23, 29-30 (D.D.C. 2001).

### III. ANALYSIS

For purposes of resolving the instant motion, the Court finds that there is strong reason to believe the jury needs protection.[2] With respect to the first three factors detailed above, the Indictment alleges that each of the defendants are each members of MS-13, an entity allegedly engaged in ongoing organized and violent crime in the Charlotte area and beyond. Among the alleged core principles of the gang are "intimidating witnesses, punishing cooperators with violence, and allegiance to the gang above all else." (Doc. No. 778 at 4). The indictment details violent acts allegedly committed by the defendants and efforts by members of MS-13 to obstruct justice in this case. Additionally, the government proffers that letters confiscated by law enforcement allegedly written in part by these defendants discuss locating, intimidating, and even killing those suspected of being informants or cooperators with the government. (Doc. No. 778: Motion at 5). The government also alleges at least three actual attempts to intimidate or corruptly influence non-gang witnesses. (Id.). Accordingly, the government met its burden, for purposes of this motion, to connect the defendants with a criminal organization with the capacity to harm jurors, and attempts by some defendants to obstruct justice.

---

[2] In so deciding, the Court makes no conclusion about whether any of the defendants should be found guilty of any of the charges in the Indictment.

4

The fourth and fifth factors are also established in this case. The RICO charge alone, which all the defendants face, carries a maximum penalty of 20 years' imprisonment, or life, depending on the underlying racketeering activity. 18 U.S.C. § 1963(a). The substantive charges, including murder, robbery, unlawful firearm possession, and drug trafficking likewise carry lengthy prison sentences. Finally, the media coverage of this case has been extensive and is expected to continue through the trial. Thus, there is an enhanced possibility that jurors' names and home addresses would become public, exposing them to intimidation and harassment. See In re Baltimore Sun Co., 841 F.2d 74, 75 (4th Cir. 1988) (ordering a district court to release the names and addresses of jurors to newspaper).

### IV. CONCLUSION

Therefore, the Court finds, for purposes of this motion, that there is a likelihood of obstruction of justice and a pattern of violence in this case that would cause a jurors to reasonably fear for their own safety. Because of the strong reason to believe the jury requires protection, the Court will empanel an anonymous jury.[3] The Court will take reasonable precaution at trial to minimize any prejudicial effect of this decision on the defendants and to protect their fundamental rights.

---

[3] Additional measures may be enacted by separate order.

5

**IT IS, THEREFORE, ORDERED** that the government's Motion for an Anonymous

Jury (Doc. No. 778) is **GRANTED**.  Neither the parties nor the public will have access to jurors'

names, home addresses, or places of employment pending further order of the Court.

Signed: January 11, 2010

Robert J. Conrad, Jr.
Chief United States District Judge

Case 3:08-cr-00134-RJC-SCR     Document 819     Filed 01/11/10     Page 6 of 6